NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIO HERNANDEZ, | CIVIL ACTION NO. 15-2145 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**COOPER, District Judge**

Julio Hernandez requests that the Court review a final decision ("Decision") of an administrative law judge ("ALJ") issued on behalf of the Commissioner of the Social Security Administration ("Commissioner"), dated November 25, 2013, denying his claim for disability insurance benefits premised upon an alleged physical disability and an alleged mental disability. (See dkt. 1 at 1–3; dkt. 5-2 at 17–27.) See 42 U.S.C. § 405(g).[1]

The Court has reviewed Hernandez's opening brief, the Commissioner's brief, and Hernandez's reply letter. (See dkt. 11; dkt. 14; dkt. 15.) The Court has also reviewed the entire administrative record (see dkt. 5 through dkt. 5-7), including: the Decision (dkt. 5-2 at 17–27); the transcript of the underlying hearing conducted by the ALJ (dkt. 5-2 at 33–68); a report of a "comprehensive" medical exam performed on Hernandez in June

---

[1] The Appeals Council subsequently denied a request by Hernandez for review of the Decision. (See dkt. 5-2 at 2–4.)

2010 by Overlook Family Practice Associates (dkt. 5-7 at 2–4); a consultative neuropsychological evaluation submitted by neuropsychologists Jasdeep Hundal and Keith Cicerone (id. at 11–18); and a consultative psychological evaluation submitted by psychologist David Gelber (id. at 21–24).  For the reasons that follow, the Court will affirm the Decision.

## ALJ DECISION

The Decision, wherein the ALJ provides a sufficient factual history and an accurate summary of the required five-step process to determine whether a claimant is disabled, states the following:

> On January 16, 2012, the claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 2, 2009.  The claim was denied initially . . . and upon reconsideration . . . . Thereafter, the claimant filed a written request for hearing . . . (20 CFR 404.929 *et seq.*).  The claimant appeared and testified at a hearing held on August 21, 2013 . . . . Jackie L. Wilson, an impartial vocational expert, also appeared at the hearing.  The claimant is represented by . . . an attorney.
>
> At the hearing, counsel requested that the claimant's sister testify.  Because the claimant had provided a thorough account of his allegations, I did not approve the witness whose testimony was merely corroborative.  However, I suggested that the claimant's sister prepare a letter setting forth her position, which I would consider before rendering a decision.  The record was held open for two weeks for submission of the letter (as well as updated ENT records).  However, to date, nothing has been received.  I find that the record is fully developed to allow me to issue a decision in this matter.

## ISSUES

> The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

. . . .

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from June 2, 2009, through the date of this decision.

## APPLICABLE LAW

[There is] a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an

individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404. l520(f)). The term ["]past relevant work ["] means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work

experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.l512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013**.

**2. The claimant has not engaged in substantial gainful activity since June 2, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).**

**3. The claimant has the following severe impairment as of June 11, 2011: degenerative disc disease of the spine (20 CFR 404.1520(c)). Prior to that date, there is no evidence of a severe impairment.**

As of June 11, 2011 but not prior thereto, the claimant's back impairment is considered "severe" under the Regulations because the medical record supports a finding that it is a medically determinable impairment which significantly limits the claimant's physical abilities to do one or more basic work activities. In addition, the record also supports a finding that the claimant's impairment has lasted at a "severe" level for a continuous period of more than 12 months.

The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part

404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has mild limitation. He lives with his elder parents and is completely independent in activities of daily living. The next functional area is social functioning. In this area, the claimant has mild limitation. He related that he has several close friends whom he sees weekly. He's had some difficulty with employers, but said he is not confrontational. He was cooperative at examinations. The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. He was found to have some minor concentration/memory deficits upon examination with the consultative psychologist, but no neuro cognitive problems at the examination with a neuro-psychologist. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(l)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairment. Particular scrutiny was given to the claimant's condition in light of Listing Section 1.00. Specifically considered was listing 1.04 for back disorders; however, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required by the listing. Section 1.02 for joint dysfunction was also considered, but is not met as the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b, nor does the evidence establish gross anatomical deformity or findings of joint space narrowing, bony destruction or ankylosis of a weight bearing joint.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). He is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and or walk up to six hours and to sit at least six hours out of an eight-hour workday.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which

they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified that he was laid off from his job in 2009. He explained that the car wash he was managing was bought out by another company and laid him off. He alleged that he would have had to stop working anyway because he was finding it hard to bend down throughout the day to clean car tires (explaining that he also had to fill-in and perform car wash duties almost half of the day).

However, I note that there are no treatment records for any back or other problems in 2009. Indeed, at a comprehensive physical examination dated June 1, 2010 (Exhibit IF), the claimant reported no physical problems. He said he was attacked twenty years ago and hit in the head with a baseball bat. He received extensive injuries to his jaw and face and had to have his jaw reconstructed. That was twenty years ago and he reported that he now plays baseball, football, soccer and tennis for exercise; and that he had no muscle pain, fatigue or weakness. He reportedly was undergoing the examination in part because he was to apply for permanent disability due to neuropsychological issues (related to an old head injury). No further treatment for any physical problems was sought until a year later when, on June 10, 2011, the claimant returned complaining of a one-year history of low back pain (which I find less than fully credible given he reported no back complaints at the 2010 examination). However, even at that time, the claimant stated that the pain only lasts 10 seconds and only occurs when standing or overextending his back. He denied numbness or weakness at that time and denied any radiculopathy or tingling sensation. He also said that Percocet completely relieved his symptoms. Findings included negative straight leg raise, tenderness at L5-S1 and full strength in all extremities. He was prescribed Flexeril and Naproxyn (Exhibit IF). An x-ray showed degenerative changes of the spine with loss of height at T2 and degenerative spurs throughout. No spondylolysis was evidenced (Exhibit l0F).

It does not appear that the claimant pursued any ongoing treatment for his back, but the x-ray done on 9/27/12 shows degenerative changes and establishes the impairment.  Giving the claimant the benefit of the doubt, I find that this report coupled with the claimant's reported complaints of back pain supports a finding of severe impairment as of his first complaints made in June 2011.

. . . .

As for the claimant's alleged psychological problems, the record shows that the claimant underwent the neuropsychological evaluation on July 13, 2011 (Exhibit 2F).  His mental status examination was normal and he was found to have a full scale IQ of 84.  He denied any history of learning problems and said he was able to drive, but had lost his license due to fines.  The doctor found his neuro-cognition intact with some decreased attention which was felt due to depressed mood secondary to a recent break up with his long time girlfriend.

The claimant was examined by consultative psychologist Dr. Gelber on April 28, 2012 (Exhibit 4F).  The exam was fairly normal.  The claimant said he had difficulty taking orders from his boss but was not confrontational, he just thought he had better ideas on how to run the business.  He said he got into arguments but didn't lose his temper.  He was asked to return to several of the jobs he was laid off from but was too proud to return.  He said he was sometimes depressed but then said his mood was okay.  He had good sleep and appetite.  He reported lower back pain and memory problems.  He also related that he was attempting to develop a business and looking into obtaining funding.  The doctor found him fully oriented and noted "marked attention and concentration deficits" but I find this inconsistent with the claimant's ability to remember a detailed history of his condition and his ability to perform most exercises, and inconsistent with the doctor's assessment of global functioning.  The claimant related that he had close friends whom he saw weekly.  He did yard work, housework and laundry.  The examiner diagnosed only ["]rule out adjustment disorder["] and ["rule out] impulse control disorders["] and assessed a global assessment score of 75–80 indicating transient symptoms in reaction to stressors.

9

I have considered the claimant's allegations of memory loss, but do not find them to be supported by any medical findings or treatment. However, even assuming there is a severe impairment causing occasional memory loss, such an impairment would not prevent the performance of unskilled work activities (as identified by the vocational expert).

Based on the aggregate record, I find that the claimant's back condition did not prevent the performance of at least light work activities. I've given some weight to the Disability Determination medical reviewer opinions in Exhibits 1A through 4A finding no severe impairments, but find that based on the x-ray in September 2012 that the claimant had a severe back impairment. He does not receive treatment and is able to carry out activities of daily living, housework, shopping and socializing.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some degree of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

**6. The claimant is capable of performing past relevant work as a car wash manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The claimant can return to his past relevant work as a car wash manager as the vocational expert described that job as light and skilled. However, even assuming that he could not do this job (for example, if he was limited to unskilled work), he would not be disabled as the vocational [expert] identified the other light jobs indicated below.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed.

Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

The claimant was born on July 19, 1960 and was 48 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563). The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform. The vocational expert found the following available light jobs: mail clerk (DOT 209.687-026 with 70,976 existing in the national economy); inserting machine operator (DOT 208.685-018 with 15,010 existing in the national economy); and small parts assembler (DOT 706.684-022 with 35,910 existing in the national economy).

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exceptional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exceptional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exceptional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of

"not disabled" is directed by Medical-Vocational Rule 202.21 and Rule 202.14.

**7. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2009, through the date of this decision (20 CFR 404.1520(f)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on January 16, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Dkt. 5-2 at 20–27.)

## ARGUMENTS AND DISCUSSION

The Court must affirm the Decision if the ALJ's findings of fact are supported by substantial evidence, i.e., evidence that a reasonable mind might accept as adequate to support a conclusion.  See 42 U.S.C. § 405(g); Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). The Court must be deferential to the inferences drawn by the ALJ from the facts if those inferences, in turn, are supported by substantial evidence.  See Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (stating court "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently"); see also Hoyman v. Colvin, 606 Fed.Appx. 678, 681 (3d Cir. 2015) (stating ALJ's credibility assessment is virtually unreviewable on appeal).

The Court will address each argument raised by Hernandez concerning the alleged errors in the Decision in turn.  Even though Hernandez suggests that he is presenting three arguments here, the Court construes his brief as presenting six grounds to be addressed.  (Compare dkt. 11 at 2 (table of contents listing three argument points), with dkt. 11 at 14–25 (presenting six separate arguments).)

I.     **Mental impairment**

Hernandez argues that his "mental impairment has more than a minimal effect on his ability to work", and thus the ALJ "failed to give proper credence to [his] complaints . . . concerning the severity of his diagnoses of traumatic brain injury, cognitive deficits, memory deficits, personality changes and depression, finding them non-severe".  (Dkt. 11 at 15–16 (citations omitted).)  He argues that he has held a variety of jobs for only short periods of time because of clashes with superiors stemming from his poor judgment in telling them how to run their businesses, and that he is forgetful and has difficulty in organizing his thoughts.  He also argues that ever since he suffered the head injury 20 years ago, he has been reckless, has been impulsive, and has had problems with authority.  He argues that his intellectual functioning is in the low average range, and that he has attention and concentration deficits.  (Id. at 16.)

This argument is without merit.  Giving the ALJ the required due deference, the Court finds that there was substantial evidence to support the ALJ's assessment of the medical records, Hernandez's testimony, the consultative neuropsychological evaluation, and the consultative psychological evaluation, as well as the ALJ's conclusion that

Hernandez is not disabled due to a mental impairment.  (See dkt. 5-2 at 23 (addressing alleged mental impairment); id. at 25–26 (addressing neuropsychological and psychological evaluations).)  See Kerdman v. Comm'r of Soc. Sec., 607 Fed.Appx. 141, 143–45 (3d Cir. 2015) (stating substantial evidence supported ALJ's findings concerning lack of mental impairment).

## II.    Evidence of severe impairment before June 11, 2011

Hernandez argues that the ALJ erred in finding that he did not suffer from a severe impairment relating to his back before June 11, 2011.  (See dkt. 11 at 16.)  He argues that he "is on charity care/Medicaid and cannot avail himself of medical treating, including objective testing because it is not covered and [he] would most likely have to pay out of pocket", and that "[a]ny further testing, treatment, [or] specialists were unobtainable in [his] circumstances".  (Id.)

The argument is without merit.  As the ALJ pointed out, Hernandez did not complain of any back pain when he had a comprehensive physical exam one year earlier in June 2010.  (See dkt. 5-7 at 2.)  Cf. Alarid v. Colvin, 590 Fed.Appx. 789, 793 (10th Cir. 2014) (stating inferences should not be drawn about claimant's symptoms due to claimant's failure to receive regular medical treatment, without considering whether claimant was unable to afford treatment or had no access to free or low-cost medical services); Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012) (stating inability to afford treatment is a "good reason" for failing to seek medical care).  Thus, the ALJ's conclusion here was supported by substantial evidence.

**III.** **Testimony of sister**

Hernandez argues that the ALJ should have permitted his sister to testify at the hearing, and that his "attorney insisted the sister's testimony be taken". (Dkt. 11 at 17.)

The argument is without merit. The ALJ properly gave Hernandez's sister an opportunity to submit a written statement instead of hearing her live testimony, and she failed to avail herself of that opportunity. See Zirnsak v. Colvin, 777 F.3d 607, 613 (3d Cir. 2014) (concerning propriety of letters submitted by claimant's relatives to ALJ concerning a claimant's alleged difficulties). The reason proffered by Hernandez for his sister's failure to do so — "they felt it would be of no use" (dkt. 11 at 17) — is meritless, particularly when the ALJ specifically advised Hernandez that the record would be held open in order to accept a letter. Furthermore, Hernandez's attorney did not "insist" that his sister be permitted to testify, as demonstrated by the transcript of the hearing:

> ATTORNEY: I think I'd like to have her.
> ALJ: She can submit a statement after the hearing.
> ATTORNEY: Okay.
> ALJ: It's usually duplicative. She doesn't live with the claimant. On this record, I don't see any strong basis. What is her purported testimony going to be concerning? I find that claimant to be fairly credible in his own estimation of his abilities.
> ATTORNEY: That's precisely what I wanted to discuss with her to get her testimony about.
> ALJ: But I've had the claimant's testimony about what he's able to do. I don't –
> ATTORNEY: All right. We'll submit a statement.

> ALJ:       Okay.
> ATTORNEY:  But I would much prefer her testimony.

(Dkt. 5-2 at 66–67.)

### IV.   Assertions of pain

Hernandez argues that the ALJ improperly found that his assertions of back pain were not credible. (See dkt. 11 at 19–21.)

A review of the Decision reveals that this is not correct. (See dkt. 5-2 at 22 ("claimant has the following severe impairment as of June 11, 2011: degenerative disc disease of the spine"); id. (stating Hernandez's back impairment is severe because it is a medically-determinable impairment that significantly limits his physical abilities to do one or more basic work activities, and it has existed for more than 12 months); id. at 25 (finding x-ray report detailing degenerative changes and Hernandez's reported pain complaints support a finding of severe impairment).) What the ALJ did find, however, is that Hernandez was capable of performing certain jobs in the national economy despite that severe pain.

### V.   Assessment of residual functional capacity

Hernandez argues that the ALJ "failed to justify [the] finding that the plaintiff could perform work at the light exertional level". (Dkt. 11 at 22.) But as the Commissioner correctly argues, this is not true. The ALJ's assessment of Hernandez's residual functional capacity included all of the credibly-established limitations set forth in the record. (See dkt. 14 at 26; see also dkt. 5-2 at 24–27.) Furthermore, Hernandez was

independent in activities of daily living; maintained close friendships; and performed yard work, housework, and laundry. (See dkt. 5-7 at 23–24.) See Cerrato v. Comm'r of Soc. Sec., 386 Fed.Appx. 283, 286 (3d Cir. 2010) (rejecting claimant's allegation that she was unable to perform low stress work, because claimant testified that she performed household chores and helped out at relative's business).

## VI. Testimony of vocational expert

Hernandez argues that in presenting a hypothetical to the vocational expert at the hearing, the ALJ "failed to include all of plaintiff's mental impairments but only limited the hypothetical individual to simple and routine, with only occasional changes in essential work tasks involving simple decision making, occasional contact with coworkers and supervisors would such a person be able to perform any of plaintiff past relevant work". (Dkt. 11 at 23.) The argument is without merit, because this Court has already found that there was substantial evidence supporting the ALJ's conclusion that Hernandez had no mental impairment, and thus it was unnecessary for the ALJ to include that in the hypothetical. See supra pp. 13–14. The ALJ accurately conveyed Hernandez's credibly-established limitations to the vocational expert during the underlying hearing. (See dkt. 5-2 at 57–65.) See Hughes v. Comm'r of Soc. Sec., No. 15-2253, 2016 WL 231676, at *3 (3d Cir. Jan. 20, 2016). In any event, an administrative law judge is not required to suggest every impairment alleged by a claimant to the vocational expert. See Zirnsak, 777 F.3d at 615.

17

Concerning his physical limitations, Hernandez argues that the ALJ incorrectly found that he could perform his past relevant work as a car wash manager.  (See dkt. 11 at 19.)  But Hernandez's assertion here is not completely accurate, as the ALJ found in full that:

> The claimant can return to his past relevant work as a car wash manager as the vocational expert described that job as light and skilled.  However, even assuming that he could not do this job (for example, if he was limited to unskilled work), he would not be disabled as the vocational [expert] identified the other light jobs . . . .

(Dkt. 5-2 at 26.)  The ALJ then went on to state those other light jobs existing in the national economy, as suggested by the vocational expert during the hearing.  (Id.)  Hernandez suggests no theory on how adding his preferred components would have changed the vocational expert's answers and the ALJ's conclusions.  See Holloman v. Comm'r of Soc. Sec., No. 15-2293, 2016 WL 475976, at *4 (3d Cir. Feb. 8, 2016).  As a result, there was substantial evidence here to support the ALJ's conclusion that Hernandez was not disabled.  See 20 C.F.R. § 404.1520(a)(4)(v) (stating that if a claimant can adjust to other work, then the claimant is not disabled).

## CONCLUSION

The Court will affirm the Decision.  The Court will issue an appropriate order.

  s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

**Dated:**  March 16, 2016